NICHOLLS, J.
The grand jury for the parish of Webster returned into the district court for that parish on the 6th of December, 1906, an indictment against the defendant, C. W. Bradley, charging him with the murder of one Thomas B. Martin. He was arraigned on December 10th, and pleaded “not guilty.”
The ease was continued over from the December term, 1906, to the June term, 1007. On June 4,1907, defendant, through his counsel, moved to quash the venire and bill of indictment. The motion was overruled, and the case was fixed for trial for the 10th of June, 1907, when it was taken up and tried. The jury returned the following verdict:
“We, the jury, find the prisoner guilty as charged without capital punishment.”
The defendant moved for a new trial, which was overruled. The court thereafter sentenced him to confinement at hard labor in the Louisiana State Penitentiary for the period of his natural life, to date from his arrival there subject to the commutation laws of the state.
Defendant appealed.
During the course of the trial eight bills of exception were taken on behalf of the defendant.
The first bill was taken to the refusal of the court to sustain defendant’s motion to quash.
The second bill was taken to the exclusion of certain statements made by the defendant to the marshal of the town of Minden (with reference to the facts which took place at the time of the killing of Martin) as not being part of the res gestm.
The third bill was to the refusal of the court to allow to be introduced evidence to prove the dangerous character of the deceased, and threats of the deceased against the accused.
The fourth bill was to permission having been given by the court to take the evidence of one Tabor, over an objection, that the state had at that time closed its case, and the testimony in question was not in rebut *251 tal of any facts which had been offered by the defense.
The fifth, sixth, and seventh bills were in reference to certain statements made by O. E. McDonald, one of the counsel assisting in the prosecution in his argument to the jury. The eighth bill was to the refusal of the court to grant defendant a new trial.
Defendant moved to quash the venire of petit jurors which was drawn to serve at the June term, 1907, for the reason that the jury commissioners did not take the oath as required by the Constitution and laws of the state, and because the jury commissioners did not repair to the clerk’s office, and there supplement the jury list, and draw the jurors as required by law. For the same reasons defendant moved to “quash the venire of grand jurors who returned the bill in this case,” and to “quash the indictment” so returned.
The district judge assigned as his reason for refusing this motion to quash that the jury commissioners were legally appointed and constituted; that they were appointed by the district judge, and were holding at his pleasure as provided by statute; that they all had taken the constitutional oath and also, the oath provided by the acts; that the clerk was ex officio a member of the commission, and the oath that he had taken as clerk of the second district court for Webster parish covered his duties' as said member, if he had not taken the oath provided by the statute.
Bill of Exception No. 2.
The bill recites that on the trial of the cause defendant had proved by the marshal of the town that at the time the gun was fired he was within 100 yards of the scene of the difficulty," and went at once in that direction, meeting the defendant, who came to meet him as he came from the scene of difficulty, and gave him his gun, and thereupon defendant offered to prove the statement which was then made to him at a place in full view of the scene of the homicide and nearby, to which the state’s counsel objected, for the reason that it was not a part of the res gestee, which objection was erroneously sustained by the court.
In reference to the matter covered by the bill, the district judge states that “defendant offered, as part of the res gestee, to prove by the town marshal a statement he had made to him as he, the marshal, was walking down the sidewalk of the town of Minden.”
The Jailing took place in the parallelogram 40 or 50 yards from the sidewalk, and after the shooting defendant walked across to, the sidewalk, and walked up same a distance of 40 or 50 yards, where he met Philips, and gave him his shotgun, and then made the statement offered as res gestee.
The defendant had walked a distance of 90 or 100 yards in the town of Minden before the words were stated to Philips — not just before, during, or just after the shooting, as the law requires. Too much time elapsed giving defendant time to make up a statement. The court did not consider the statement of the res geste, and excluded it.
The third bill recites that, on the trial of the case, it was a material inquiry as to the mental condition of the defendant on the day and at the time of the homicide. And, evidence having been offered tending to show that the defendant was of insane mind and mentally and legally irresponsible for his acts upon that occasion, and it having been established by competent medical experts who had heard ithe testimony adduced on the trial of the cause, both upon the part of the state and the part of the defendant, that there were indications of insane and irresponsible conduct on the part of the defendant on the day of the killing, both immediately preceding and following the act of the homicide, and it having been further specifically stated by the medical experts that threats against the life of the defendant *253 made against him by a man of well-known dangerous and violent character (the said threats having been communicated to him) would have been a strong superinducing cause leading to a mental condition that would have made him incapable of distinguishing between the right and wrong of the act committed, and further deprived him of sufficient control of his will, it thereupon became an important and material inquiry as to whether such threats had been made against the life of the defendant by a man of known violence and dangerous character, and, further, those threats had been communicated to the defendant, and, in aid of this contention on the part of the defendant, the following named witnesses were offered to prove the said dangerous character of the deceased and the communication of his threats to the defendant: J. J. Holmes, Dr. S. J. Harrell, A. Glass, Walter Hadley, B. G. McIntyre, O. C. Walker, and D. M. Hadley —which testimony was rejected by the court.
In reference to this matter the court said: “After the court had ruled that the defendant had not shown the overt act by proof, and ruled out all evidence of dangerous character and threats which he had tendered to show and prove self-defense, his counsel offered to prove dangerous char’acter and threats for the purpose of proving insanity of defendant, the court held that he could not be allowed to (in this way) get legal evidence before the jury. The defendant had made a voluntary-statement giving in detail the bad and dangerous character and threats in his statement. He was allowed to state any and every thing in this statement which he did, and the whole matter in that way was already before the jury, and, for the purpose of showing his insanity, the bad and dangerous character and threats were all before the jury from defendant’s voluntary statement for them to consider, and the fact that defendant knew of them from his own statements, for the purpose of determining the question of insanity, the jury knew as to these threats and dangerous character at that time as well as they could know by further mentioning them in detail, therefore, that- this ruling did not injure defendant nor deprive the jury of the knowledge of the fact that defendant knew of the threats and dangerous character, and that the same was on the mind of defendant — to which ruling the defendant then and there duly excepted, , and tendered a bill of exception, which was allowed and ordered entered of record.”
Bill of Exception No. 4.
This bill recites that, upon the trial of the cause, the state having closed its case and the defendant having offered his testimony, thereupon the state came to offer its evidence in rebuttal, and in tendering the said evidence in rebuttal the state tendered a witness, Tabor, and offered to prove by him that the defendant, several hours before the homicide, about four miles distant from the place of the homicide, with the defendant going in a direction away from the place where - the difficulty subsequently occurred, was seen in the possession of two guns, which evidence was not in rebuttal of any evidence offered on the part of the defendant, to which evidence the defendant objected because it was not in rebuttal of any facts offered by the defendant, which objection was overruled and the evidence admitted.
In his per curiam, the judge says:
“The defendant had offered to show that his mission to town was a peaceful one. This evidence was offered to rebut this evidence and idea.”
Bill No. 5.
This bill recites that, upon the trial of this cause, the counsel of the state, O. E. McDonald, in making the closing argument on the part of the state, stated that he had defended the man who killed Clem Franks, and that man was not Tom MÍartin, and *255 tliat lie was convicted and sentenced to the State Penitentiary, which fact had not been proved or offered to be on the trial of the cause; but an effort had been made by the defense to introduce evidence to show in proof of the dangerous character of T. B. Martin, deceased, that he had caused the hilling of Clem Franks, which evidence had not been allowed by the court for the reason assigned in bill of exception No. 3, which statement was very prejudicial to the interest of the defendant, and was at once objected to by the counsel for the defense, and a bill of exception was then and there reserved, to which statements of counsel for the state the defendant excepts, as the statements were not withdrawn and were prejudicial to the defendant, nor did the charge of the court instruct the jury with reference to the statements.
In the judge’s per curiam, it is stated that the defendant had made a voluntary statement to the jury which was not evidence in the case. Counsel for defendant afterward had him sworn as a witness, and asked him if his voluntary statement he had made to the jury was true, and before counsel for state could make an objection, and before the court could rule on the question, he answered it was all true.
Defendant’s attorney argued to the jury that his statement was evidence. Counsel for the state in his argument was answering argument of defendant discrediting the statement of Bradley, and the court thinks this did not prejudice the case.
Bill of Exception No. 6.
This bill recites that, upon the trial counsel for the state, C. E. McDonald, in making the closing argument on the part of the state, stated that he had defended the man who shot Bill Berry, and that it was not Tom Martin, and that he was tried and convicted, which fact had not been proved or offered to be on the trial of the cau?"; but an effort had been made by the defense to introduce evidence to show that in proof of the dangerous character of T. B. Martin, deceased, that he had caused the shooting at Bill Berry, which evidence had not been allowed by the court for the reasons assigned in bill of exceptions No. 3, which statement was very prejudicial to- the interest of the defendant, and was at once objected to by the counsel for the defense and a bill of exceptions was then and there reserved, to which statement of counsel for the state the defendant excepts, as the statements were not withdrawn and were prejudicial to the defendant; nor did the charge of the court instruct the jury with reference to the statements.
The judge gives as his reasons the same as those given in bill No. 5.
Bill of Exception No. 7.
This bill recites that on the trial of the cause counsel for the state, O. E. McDonald, in making his closing argument on the part of the state, stated that he inferred that the defendant O. W. Bradley was carrying two guns, about which the witness Tabor testified, out into the woods where timber was being cut, for the purpose of killing Tom Martin, which fact had not been proved or offered to be on the trial of the cause.
The. judge in his per curiam states that this was only a proper deduction from the evidence defendant had offered that Bradley was over there for the purpose of cutting timber, and did not prejudice the case.
Bill of Exception No. 8.
Defendant’s application for a new trial was based upon the claim that the verdict was contrary to the law and the evidence, and because, after the jury had been drawn, impaneled, and sworn and charged by the court, the deputy sheriff who had them in *257 charge unthoughtedly spoke to the jurors about the facts of the ease, and as to their verdict. The court refused a new trial, assigning as his reasons that the verdict was in accordance with the law and the evidence, and that the deputy sheriff had said nothing about the case, and could not have influenced the jury in rendering their verdict.
This ruling was excepted to in bill No. 8.
The state contends that the motion to quash was filed too late, but under section 16 of Act No. 135, p. 224, of 1898, it was not. It was filed before entering on the trial of the case. It was admitted by defendant that the jury commissioners who were in office at the beginning of the present incumbent’s term (the judge’s) have continued to serve without reappointment, with the exception of one who has been appointed by the present presiding district judge to fill the vacancy caused by the death of O. J. Gray (Bryant Delafield having been appointed to fill the vacancy), and that the commission composed as above stated drew the present jury. It was further admitted that J. H. Tillman, the present clerk of the district court, was elected at the last general election.
The attack upon the “jury commission” was evidently based upon the proposition that, upon the election of a district judge, the jury commissioners then in office ceased to be such, and that it became the duty of the newly elected judge to replace them, that it became the duty of the new commissioners to take an oath under the appointment so made. We do not find from an examination of the law bearing upon the jury commission (Act No. 135, p. 216, of 1898) that the jury commissioners who are appointed by a district judge shall cease to be such by the election of a new judge. The statute states that “they shall hold their office during the pleasure of the district judge.” Once appointed and qualified they continue in office so long as the district judge has not by affirmative action destituted them. It is not pretended that Tillman was not the duly elected and qualified clerk of the district court. It was not necessary for him to take a special oath as jury commissioner (State v. Starr, 52 Ann. 610, 26 South. 998). We find that the jury commission was properly organized, and that defendant’s attack upon it not well grounded.
The second branch of the motion to quash is leveled against the venire of petit jurors for the June term, “because the jury commissioners did not repair to, the clerk’s office, and there supplement the jury list and draw the jurors as required by law.” It is not suggested, still less proved, that:
“Any fraud had been practiced or some great wrong committed in the selection and the summoning of the jury that would work irreparable injury.”
No complaint was made (so far as the record discloses) to any member of the jury on the list. The fifteenth section of Act No. 135, p. 223, of 1898, declares that it shall not be sufficient cause to challenge the general venire selected for any session' of the court or portion thereof or for service at any time in any parish or district of this state or set aside the venire because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury as above provided, and (no) such defect or irregularity in the selection thereof or the summoning of the jury shall be sufficient cause, if it does not appear that some fraud has been practiced or some great wrong committed in the selection and the summoning of the jury that would work irreparable injury, provided that it shall be good ground to challenge for cause any juror who is not qualified to act under the provisions of the act.
We do not think that the fact objected to was under the circumstances of the case of *259 character such as to justify a setting aside of the venire. State v. Sheppard, 115 La. 943, 40 South. 363; State v. Thompson, 104 La. 169, 28 South. 882.
Bill of Exception No. 2.
We cannot say that the court erred in respect to the matter complained of in this bill. The remarks of this court in State v. Blanchard, 108 La. 110, 32 South. 397, find application here.
Bill of Exception No. 3.
Defendant seems to have relied in the district court upon two defenses: First, that he acted in “self-defense” in killing Martin; second, that he was of insane mind when he committed the homicide. The two defenses are not necessarily inconsistent, for an insane man may be the object of an attack upon his life at the hand of a third person; indeed, that fact might be provocative of such an attack from a person who was unaware of his condition. But, when “self-defense” is set up as a “justification,” the evidence on the subject must be made to conform to the requirements of that special defense. Evidence as to the dangerous character of the man killed and of his having made threats against the man killing him (even if such threats have been communicated to him) would not make the killing “justifiable,” in the absence of all evidence tending to show an overt act or hostile demonstration made by the deceased against the person who has slain him, and such was the situation in this case at the time according to the statement made by the district judge. Mere apprehension or terror arising from those facts per se would not excuse a homicide. Prom the standpoint of the special defense of' self-defense proper, we think the exclusion by the court of the testimony of dangerous character of the deceased and of threats made by him against the defendant (of which facts he may have had knowledge) the ruling of the court was correct. The question remains, however, whether such evidence should have been excluded, when offered under the circumstance it was offered, as shown by the recitals of the bill of exception and for the particular purpose for which it was offered. The statements made by counsel of defendant in the bill of exceptions as to the situation which existed at the time the testimony was offered (which were not contradicted, or their effect in any way weakened by anything said by the District Judge) were that evidence had been offered tending to show that defendant was of insane mind and mentally and legally irresponsible for his acts on that occasion; that- it had been established by competent medical experts who had heard the testimony adduced on the trial of the cause, both upon the part of the state; that there were indications of insane and irresponsible conduct on the part of the defendant on the day of the killing, both immediately preceding and following the act of homicide; that it had been specifically stated by the medical experts that threats against the life of the defendant made against him by a man of well-known dangerous and violent character (the said threats having been communicated to him) would have been a strong superinducing cause leading to a mental condition that would have made him incapable of distinguishing between the right and the wrong of the act committed and further depriving him of sufficient control of his will; that thereupon it became material and important inquiry as to whether such threats had been made against the life of the defendant by a man of known violence and dangerous character, and, further, whether those threats had been communicated to. the defendant, and in aid of this contention on the part of the defendant the following-named witnesses (naming seven persons) were offered to prove the said dangerous character of the deceased and the communication of his; threats to the defendant; that this testimony- *261 was rejected by tbe court for tbe reasons assigned by bim. Defendant’s counsel refer tbe court to State v. Sickles, State v. Thaw, State v. Bywalters, Lawson, p. 476, Am. & Eng. Ency. of Law, 13, S. B., 126 N. Y. 249,[1] People v. Wood, People v. Osmond, 138 N. Y. 80, 33 N. E. 739, French v. State, 93 Wis. 325, 67 N. W. 706, as going to show that proofs should be admitted of acts wbieb caused tbe insanity or could cause it. Tbe syllabus in tbe Wood Case in New York recites that:
“Upon the trial of an indictment for murder to which insanity was pleaded as a defense, after evidence had been given tending to prove a diseased condition of the defendant’s brain caused by injuries to his head and as a result thereof irrational acts and declarations, the defendant’s wife was called as a witness for him. An offer was made by her to prove that a short time before the day of the homicide she had told defendant that the deceased, who was her father, had stolen his potatoes; also, that the deceased had on several occasions before her marriage criminally assaulted her, and forced her against her will; and since her marriage within a very short time had come to their house in defendant’s absence, and similarly criminally assaulted her and threatened to kill her if she told any one. Counsel stated that he offered the evidence, not as proof of the truth of the statement, but that he would show that defendant believed it and that it operated on his mind to such an extent as to render him insane on the day he committed the offense. This evidence was excluded, the judge stating that, if it was admitted, he would discredit it, and would regard it as almost conclusive evidence that the witness was anxious to have her father murdered and was acting in complicity with defendant.
“Held error. That the evidence offered was competent in connection with proof of subsequent conduct and appearance as showing the effect on defendant’s mind upon a brain, which there was evidence tending to show was weakened and diseased; that it was material, as the fact offered to be proved might account for or tend to insanity.”
In tbe district court the existence in tbe defendant of insanity at tbe time of tbe homicide and tbe ascertainment whether the homicide bad resulted from such insanity as its cause were questions of fact, and tbe defense bad the right to have all tbe evidence pertinently and legally bearing on those questions submitted to and determined by tbe jury. Evidence bad been received and submitted to it tending to show to some extent that defendant was insane at that time. Evidence bad also been received from experts, and submitted to the jury that, if threats bad been made against defendant by a man known by him to be of a violent character and such threats had been communicated to bim, a knowledge of such facts might have so preyed on him in bis condition of mind to such an extent as to release bim by reason of insanity from criminality for his act in killing tbe man. In that condition of tbe evidence it became material and competent for the defense to show that such threats bad been made against defendant by a man known by defendant to be of that character, and such threats bad been communicated to bim.
It wa,s necessary and proper that the jury should deal with tbe issues submitted to it with full knowledge of tbe exact situation and condition of things, at the time of the homicide in respect to those issues. If evidence going to establish a physical cause for producing insanity existed at the time of the homicide, such as a fall from a tree or a blow from an axe, would be admissible, the defense logically should be permitted to prove the existence of a moral cause likely to bring about the same results when by competent evidence such a moral cause had been shown likely to produce it.
We think the testimony which was offered by the defense for the purpose stated in bill of exception No. 8 under the condition of the evidence as recited by counsel of defendant should have been admitted, not excluded. We think the exclusion was prejudicial to the defendant, and the action of the court was reversible error.
The conclusion we have reached on this subject makes it unnecessary for us to discuss and decide the questions raised by bills of exception 4, 5, 6, 7, 8.
*263 For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury in this case be set aside, and the judgment rendered therein herein ap-liealed from be, and the same is hereby annulled, avoided, and reversed, and this cause is now remanded to the district court to be there further proceeded with according to law.

 27 N. E. 362.