148 So.2d 593

STATE of Louisiana

v.

Henry DePIETRO.

No. 46225.

Jan. 14, 1963.

Watts & Crain, Franklinton, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for appellee.

HAMITER, Justice

The defendant herein, Henry DePietro, and Frank Scianna were jointly indicted for the murder of one Leonard Shipp. On the motion of the state a severance was ordered. Thereupon, DePietro was tried; the jury returned a verdict of guilty without capital punishment; and the judge sentenced him to life imprisonment at hard labor in the State Penitentiary. He is appealing.

During the course of the trial numerous bills of exceptions was reserved. However, many of them have been abandoned; and in this court the defendant relies on only those hereinafter discussed to obtain a reversal of the conviction and sentence.

For a better understanding of some of the bills relied on we deem it advisable to outline briefly the state's theory of the manner in which the alleged crime occurred, it being as follows: On June 5, 1961 the defendant and Shipp traveled together, in a truck belonging to the latter and driven by him, from Bogalusa in Washington Parish to a point a few miles north of that city. Scianna followed in his automobile. Upon stopping, the defendant alighted from the truck, walked around to the driver's side, produced a pistol, and fired three bullets into Shipp's head. He then shot himself in a leg.

Shortly thereafter Scianna took the gun, disposed of it, and returned to Bogalusa in his car. The defendant re-entered the

truck, drove it to an establishment known as Moore's Cleaners located on Ann Street in the named city, and there had some one call the police. When the officers arrived he informed them that a negro had shot Shipp on Ann Street, some three blocks away, and then fired a bullet into his (De-Pietro's) leg as he was running away.

Bill Number 3 was taken to the court's permitting the state to introduce photographs of the decedent, defense counsel having objected on the ground that they were irrelevant and would serve no purpose other than to prejudice the jury. Bills Numbers 4 and 5 were reserved when the judge allowed the witness who made and identified the photographs to approach the jury box and display them, the overruled objections urged being the same as that which formed the basis of bill Number 3.

■ The photographs are not contained in the record before us. However, conceding that they show, as suggested by counsel, "the bullet wounds in the head of the deceased with traces of blood streaming therefrom" there was no error in permitting the introduction of them. They were admissible for the purpose of corroborating the testimony of the coroner and of the investigating police officers regarding the cause of death, and as to the location, severity and number of wounds. See State v. Eubanks, 240 La. 552, 124 So.2d 543. And since they were properly introduced into evidence no error was committed in allowing the jury to view them.

■ Bill Number 7 was taken to the overruling of an objection to a question propounded by the district attorney to Sheriff Crowe of Washington Parish in an effort to show that the story told by defendant relative to the place of the crime's occurrence was false. That officer was asked if he had found anyone who had heard shots on Ann Street during the afternoon of the killing, and to the question defense counsel objected for the reason that it called for hearsay testimony. The sheriff's answer was "We did not".

Clearly the testimony sought to be elicited cannot be considered hearsay. Its only purpose was to show the negative result of an investigation made by the sheriff on Ann Street at the place where defendant had asserted the shooting occurred. State v. Sharp, 174 La. 860, 141 So. 859, relied on by counsel, is inappropriate. The question held to be improper therein was one calling for a witness' opinion as to the intoxicated condition of the decedent (whom he had not even seen) that was based purely on statements made to him by other persons.

Bill Number 8 was reserved while Scianna was on the stand as a witness for the state. He had testified regarding two conversations that took place in his presence between the defendant and a Mrs. Juanita Wise, during which they had discussed the

matter of killing Leonard Shipp. Then occurred the following question to, and answer given by, him which were objected to:

"Q. Do you know of your own knowledge the relationship that existed between Mr. DiPietro and Mrs. Wise?

"A. A love affair."

Defense counsel urged that the question was improper since the relationship of the named persons was immaterial and irrelevant and the showing of it could have only the effect of prejudicing the jury against the character of defendant when he had never placed his character at issue. In explaining his overruling of the objection the district judge states in his per curiam: "The testimony elicited was relevant since it tended to show such a relationship between the parties as to be consistent with the nature of the conversation testified to."

■ It appears unnecessary to pass upon the soundness of the judge's reasoning, because the testimony taken in connection with the bill discloses that the objection was not offered until after the witness had answered in the presence of the jury. Then it came too late, particularly since it does not appear that there was insufficient opportunity to object before the answer was given. See State v. Foster, 164 La. 813, 114 So. 696; State v. Carter, 167 La. 1080, 120 So. 864 and State v. Goins,

232 La. 238, 94 So.2d 244. As is stated in 23A C.J.S. verbo Criminal Law, § 1060, page 5, " * * * a party cannot be permitted to speculate on the answer of the witness, and then, if the answer is unfavorable, interpose an objection. * * *" Bill Number 8, accordingly, is without merit.

Bills Numbers 15 and 17 will be discussed together, they being closely related. The bills were reserved under the following circumstances: During presentation of the state's case in chief it was indicated that certain items, obtained during the investigation of the crime, had been forwarded to the F.B.I. laboratory for analysis and returned. Whereupon, defense counsel requested permission to inspect all of them.

Initially, the district attorney agreed to produce the articles for inspection but later he withdrew his consent, and he objected to the granting of the mentioned request on the ground that it amounted to an attempt to obtain the evidence of the state before it had finished presenting its case. Following the objection the judge announced that he would hear argument by defense counsel as to particular items that would be beneficial to the defendant's case and without which he would be prejudiced. Counsel stated that they needed to inspect the shirts worn by the defendant, by the deceased and by Scianna at the time of the commission of the alleged offense, as well as

a tire cast and certain pieces of metal taken from the truck. The judge then ruled that counsel might examine defendant's shirt after the state rested; and that if it later developed that the defendant would benefit by an inspection of any of the other articles he would grant permission for counsel to make it. At that time no objection was urged to the ruling.

Immediately prior to the completion of defendant's case his counsel requested that they be permitted to view all of the items (other than the shirt theretofore examined) that were sent to the F.B.I. laboratory for analysis. This request was denied and bill Number 15 was reserved.

Following defendant's conviction his counsel, by virtue of a formal written court order, were permitted to view all of the articles returned from the F.B.I. laboratory. Concededly, none would or could have served any useful purpose in connection with the defense, except possibly two documents (one was four pages long and the other one page) written in long hand and unsigned. Based primarily on these two documents a motion for a new trial was filed. On its denial bill Number 17 was reserved.

In their brief to this court, as in the motion for a new trial, defense counsel argue: "* * * The State had in its possession evidence, in the form of certain 'reports', in which the intent of the writer to murder the deceased, Leonard Shipp, was apparent. * * * These unsigned reports * * * reveal that the writer of the reports was eagerly anticipating the impending death of the deceased in this case, Leonard Shipp, and was apparently only waiting for the opportune time in which to accomplish this result. It is submitted that any reasonable man would reach the conclusion that it is probable to a high degree of certainty that the writer of the report was the murderer of Leonard Shipp. * * * Henry De-Pietro testified that he did not write the reports. * * * It should also be pointed out that denying the defendant the right to view these items held by the State deprived them of an important weapon for cross-examining the witness, Frank Scianna, upon whose testimony the State's entire case was based. * * * In conclusion, defendant respectfully contends that under the circumstances as outlined above it was reversible error to deny him the right to view the evidence in the State's possession. * * * "

In our opinion the ruling involved in bill Number 15 was undoubtedly correct. Prior to its announcement defense counsel had made no satisfactory showing that the items they sought to inspect (except the shirt of the defendant of which examination was permitted) were relevant to the case. In fact, they had not even mentioned the two documents, on which the motion for a new trial was principally predicated later, not-

withstanding that those items were in the possession of the defendant when he was apprehended.

As to whether the subsequent defense showing relative to such documents warranted the granting of a new trial the district judge stated in his per curiam: "* * * Testimony was heard concerning some of the State's evidence which had not been available to defense during the trial of the case, but which was made available for inspection thereafter. The evidence consisted of two 'reports' written by a person unknown. The Court considered this evidence too speculative to form the basis for a new trial." We have carefully examined the documents and are convinced that the judge was correct in his conclusion.

■ It would serve no useful purpose to detail the purport of the writings. Suffice it to say that the shorter one not even remotely suggests the meaning attributed to it (quoted above) by defense counsel. Nor can the longer one be so interpreted. Firstly, it is barely readable and is almost incoherent. Secondly, it seems to indicate only that some sort of business dealings between certain persons identified by initials and the writer thereof were not progressing satisfactorily, and that the latter was eager "to get this over" (the dealings).

■ Sometime after the jury had retired to deliberate they returned to the court room and requested the judge to again define the crime of murder. He did so, and he also redefined the crime of manslaughter. Thereupon, the jury retired for further deliberations. Defense counsel then urged an objection and reserved bill Number 16 on the overruling of it. The objection did not raise any question as to the correctness of the definitions given. Apparently it was offered because the judge, when giving them, did not also reinstruct the jury that a verdict of manslaughter is responsive to a charge of murder.

Initially, it strikes us that the objection is without merit for the reason that the jury did not ask, on returning to the court room, to be given further instructions regarding responsive verdicts. Nevertheless, the bill is groundless because, as recited in the judge's per curiam, the jurors were originally instructed concerning responsive verdicts and they had in the jury room a written list of such verdicts. The law, as we appreciate it, does not require that the judge (after having properly and fully instructed the jury) give additional instructions beyond those requested.

For the reasons assigned the conviction and sentence are affirmed.