STATE of Iowa, Appellee,

v.

Romaul WASHINGTON, Appellant.

No. 65310.

Supreme Court of Iowa.

July 15, 1981.

Stanford J. Patterson of the Patterson Law Firm, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Roxanne Ryan, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

LARSON, Justice.

The defendant, Romaul Washington, was convicted of first-degree theft, §§ 714.1, 714.2, The Code 1979. On appeal, he contends the court erred in (1) denying his motion for judgment of acquittal, Iowa R.Crim.P. 18(10), (2) denying a requested instruction on prior inconsistent statements, and (3) denying his mistrial motion based upon alleged prosecutorial misconduct.

We view the evidence in the light most favorable to the guilty verdict. *State v. Kern*, 307 N.W.2d 22, 23 (Iowa 1981). That evidence showed that the victim was shopping within a grocery store when the defendant entered the store. An employee observed the defendant approach the victim's shopping cart, surreptitiously remove a small brown billfold from her purse in the child carrier section of the cart and place it in the pocket of his overcoat. Although the victim had her hand on the shopping cart, she was viewing items in the store's dairy case and was unaware that her billfold had been taken. The defendant continued walking down the aisle and toward the only customer exit. He was arrested in the store's parking lot.

At trial the defendant moved for judgment of acquittal as to first-degree theft, asserting that while this act might be "theft" under section 714.1, The Code, it

was not a "theft from the person" so as to make it theft in the first degree under section 714.2(1). That section provides: "[t]he theft of property . . . from the person of another . . . is theft in the first degree." The trial court denied the motion and submitted the case to the jury with an instruction that "[t]he term 'from the person' means not only from the actual body or clothing of the victim, but also means from her immediate presence and possession of or from her immediate charge and custody."

I. *The scope of section 714.2(1).* Two distinct approaches have been taken in interpreting statutes similar to section 714.-2(1), the first requiring property to be taken "directly off" or "actually from" the victim, and the second requiring only a taking from the immediate presence of the victim. *See* W. LaFave A. Scott, *Criminal Law* 695 (1972); 3 *Wharton's Criminal Law* § 369, at 347 (C. Torcia ed. 1980); 2 *Wharton's Criminal Law and Procedure* § 502, 175–76 (R. Anderson ed. 1957); Annot., *Larceny "From a Person,"* 74 A.L.R.3d 271, 274–76 (1976); 50 Am.Jur.2d *Larceny* § 48, at 214 (1970); 52A C.J.S. *Larceny* § 8, at 431, § 11, at 433 (1968). In *State v. Kobylasz,* 242 Iowa 1161, 47 N.W.2d 167 (1951), this court adopted the latter view in a case involving the "picking up" of a pocketbook lying on a car seat between the defendant and the victim. The court stated:

> Here the property was in the possession and immediate presence—in the immediate charge and custody—of [the victim.] We think the taking, under the testimony, was away from, though not actually *off,* her person. She was at the moment carrying it on the automobile seat beside her. The jury could find it was stolen from her person.

*Id.* at 1172–74, 47 N.W.2d at 170.

Subsequently, in *State v. Marsan,* 221 N.W.2d 278 (Iowa 1974), we adhered to the *Kobylasz* reasoning. In *Marsan* the accused sought to nullify her previous plea of guilty on the ground that it had no factual basis; the court, citing *Kobylasz,* responded:

> If we assume the truth of her statement that the billfold was taken from the side-

walk at [the victim's] feet (after it mysteriously fell from his pocket) the charge [under § 709.6, The Code 1973] would nonetheless lie. The property absent the thieves' intervention, was *in the possession and immediate presence, charge and custody of [the victim].*

*Id.* at 280 (emphasis added).

The defendant asks us to reexamine the holding of these cases, especially in view of the wording change in the statute. *Kobylasz* and *Marsan* were decided under the old larceny-from-the-person statute, § 709.6, The Code 1950, 1973, which prohibited "stealing from the person of another." In 1978 the statute was rewritten as part of the new criminal code, and "theft" was substituted for "stealing." We do not view this as a substantive change but one made to achieve uniform terminology in the new code. We believe this change is of no significance as to this issue. If the legislature had intended to limit the scope of our previous statute as interpreted by *Kobylasz* and *Marsan,* it could have easily done so. It apparently chose not to. Policy considerations also suggest it did not intend to change the law: theft from the victim's area of control, because of its potential for physical confrontation with the thief, could logically be seen as justifying an enhanced penalty.

We conclude the trial court properly submitted first-degree theft.

II. *"The prior inconsistent statement."* During the trial one of the arresting officers testified on direct examination:

> As we were handcuffing [the defendant a billfold] fell from the front part of his clothing, fell to the ground between his feet.
>
> Q. *Do you know where [the billfold] came from . . . ?*
>
> A. It came from his person, that's all I can say.
>
> \* \* \* \* \* \*
>
> It fell directly between his feet where he was . . . standing when we handcuffed him.

On redirect examination the witness elaborated:

Q. [W]hen you say that it fell did you notice it fall or—

A. No, I just heard it. I was to the rear so I had no vision.

Counsel for the defendant continued this line of questioning on recross-examination:

Q. [Y]our direct testimony was that you saw [the billfold] fall from his person. You didn't see it fall from the person now. Which is it?.

A. I heard it hit the ground.

\* \* \* \* \* \*

Q. But your direct testimony you said you saw it fall. That was incorrect; is that correct?

A. Right.

In light of this "conflict" in the witness' testimony the defendant requested that the trial court instruct the jury on the witness' "prior inconsistent statement." *See State v. Gilmore,* 259 N.W.2d 846, 857 (Iowa 1977); Fed.R.Evid. 613. The defendant now contends this refusal was error.

■ However, an instruction on a prior inconsistent statement is warranted only if the statement was made in advance of trial. *See State v. Cuevas,* 282 N.W.2d 74, 82 (Iowa 1979); *State v. Thomas,* 162 N.W.2d 724, 727 (Iowa 1958) ("impeachment is showing contradictory statements which have been made out of court and which are at variance with the testimony at trial"); C. McCormick, *Handbook of the Law of Evidence,* § 34, at 67–68, § 251, at 601 (1972); J. Wigmore, *Evidence* § 1018, at 995 n.4, 996 (1970). In the present case each statement was made before the jury; any inconsistencies in the witness' testimony, and thus his credibility, could be evaluated by the jury under the trial court's general instruction on credibility of witnesses. It was not error to refuse the requested instruction on prior inconsistent statements.

*III. Prosecutorial misconduct.* After the State's closing argument the defendant moved, unsuccessfully, for mistrial, arguing that the prosecutor made an improper argument in two particulars: that he commented "beyond the scope of rebuttal," and that he "elicited a promise" from the jury. These grounds are reasserted on appeal.

■ The challenged argument was not reported, and the defendant made no attempt to make a record of it by a supplemental statement of the proceedings under Iowa Rule of Appellate Procedure 10(c). Under the circumstances, we will not speculate as to what was said. A trial court has broad discretion in ruling on motions for mistrial. *See State v. Cuevas,* 288 N.W.2d 525, 536 (Iowa 1980); *State v. Mayes,* 286 N.W.2d 387, 392 (Iowa 1979). Under the record here, or lack of it, we cannot say that discretion was abused.

AFFIRMED.