Terry J. **HARRINGTON,**
**Plaintiff–Appellant,**

v.

**Crispus NIX, Warden, Iowa State Penitentiary, Defendant– Appellee.**

No. 92–1078.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Jan. 8, 1993.

James P. Cleary, Phoenix, AZ, argued, for plaintiff-appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, IA, argued, for defendant-appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSENBAUM,* District Judge.

PER CURIAM.

Terry Harrington appeals the district court's [1] denial of his petition for a writ of habeas corpus. We affirm.

## I. BACKGROUND

We briefly outline the relevant facts, which are contained in greater detail in the Iowa Supreme Court's opinion in Harrington's direct appeal, *State v. Harrington*, 284 N.W.2d 244 (Iowa 1979). On July 22, 1977, Harrington, Curtis McGhee, and Kevin Hughes drove from Omaha, Nebraska to Council Bluffs, Iowa, in order to steal a car. *Id.* at 245. Harrington, carrying a

---

* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

shotgun and joined by McGhee, entered an auto dealer's lot; Hughes waited in the car. "Three or four minutes later, Hughes heard a shot," *id.* at 246, and McGhee and Harrington ran back to the car. In response to Hughes' question, Harrington stated he had shot someone; later, Hughes verified Harrington's statement with McGhee.

The next morning, a private security guard was found dead from shotgun wounds by some railroad tracks near the car dealership. Harrington was convicted of first degree murder and sentenced to life imprisonment without the possibility of parole. McGhee was also convicted of first degree murder and sentenced to life imprisonment without the possibility of parole. *See State v. McGhee,* 280 N.W.2d 436 (Iowa 1979), *cert. denied,* 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980). Hughes testified at both trials. After exhausting the available avenues of relief existing in the state courts, Harrington filed for a writ of habeas corpus in federal district court. The petition was denied, and Harrington appeals. Additional facts will be presented as they become relevant to our discussion.

## II. DISCUSSION

### A. Corroboration of Hughes' Testimony/Sufficiency of the Evidence

■ At the time of Harrington's conviction, Iowa law provided as follows:

> A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof.

Iowa Code § 782.5 (1977).[2] Harrington argues that Hughes' testimony was not corroborated as required by Iowa law, and he was therefore convicted on the basis of insufficient evidence. The state argues, and the Iowa Supreme Court held, that § 782.5 was satisfied because there was sufficient corroboration. *Harrington,* 284

N.W.2d at 248–49. The state also argues that § 782.5 is not at issue because Hughes was not Harrington's accomplice. We need not address these specific issues because state laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review. *E.g., Redding v. Minnesota,* 881 F.2d 575, 578 (8th Cir.1989), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990); *Gipson v. Lockhart,* 692 F.2d 66, 68 (8th Cir. 1982) (per curiam). There is also no constitutional requirement that accomplice testimony be corroborated. *See DuBois v. Lockhart,* 859 F.2d 1314, 1317 (8th Cir. 1988).

■ To the extent that Harrington raises a challenge to the sufficiency of the evidence, we simply require that "the evidence adduced at trial, when viewed in the light most favorable to the government, be sufficient to persuade a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). As a matter of federal constitutional law, there was sufficient evidence for the jury to convict Harrington. Hughes' testimony places Harrington at the scene of the crime and in possession of the murder weapon. Hughes also testified he heard the shotgun blast, and that Harrington stated he shot somebody. Forensic testing verified that a shotgun had been carried in Harrington's coat. The jury was entitled to discredit Hughes because he was involved in the events of that night and because an alibi witness testified that she was with Harrington on the night in question. However, *Jackson* does not require this; the jury was also entitled (as it obviously did) to believe Hughes and disbelieve the alibi witness. We conclude there was sufficient evidence upon which the jury could find Harrington guilty because the standards prescribed by *Jackson v. Virginia* have been met.

### B. Intimidation of a Defense Witness

■ Harrington contends the prosecutor intimidated his alibi witness, Thea Scott, by

---

**2.** We do not mean to imply this is no longer a requirement under Iowa law; the requirement now appears as Rule 20.3 of Iowa's Rules of Criminal Procedure.

having her brought from her home in Nebraska to his office in Council Bluffs. There, Scott was interviewed and administered a polygraph, which she was told she had failed. Scott was also warned about the consequences of committing perjury, and was returned to her home. Scott and the Council Bluffs police officers involved testified about these events in the state trial court's chambers. The trial judge (properly) admonished the police officers and the prosecutor for engaging in these tactics, but concluded that Harrington's rights were not violated because Scott testified she consented to the polygraph and was still willing and able to testify on Harrington's behalf. Scott did testify, averring that Harrington was with her and two other friends at the time the security guard was shot. The Iowa Supreme Court affirmed the trial court's determination, concluding that even if misconduct had taken place, Harrington had not been prejudiced. *Harrington*, 284 N.W.2d at 251.

Harrington relies primarily upon *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) to support his claim for relief. *Valenzuela–Bernal* addressed the constitutional implications of the government deporting witnesses that the defendant wanted to have testify on his behalf. The Court held there was no violation unless the absent testimony was relevant, material, and vital. *Id.* at 867–69, 102 S.Ct. at 3446–48.[3] In this case, there is no doubt that Scott's testimony was relevant, material, and vital—however, it is equally clear that the prosecution's actions did not prevent Scott from testifying, and Harrington suffered no prejudice. Scott told the trial judge she was not sufficiently intimidated to prevent her from giving truthful testimony, and she did testify in front of the jury. We discern no denial of due process under these circumstances.

## C. Concealment of Charges Against Hughes

■ At trial, Hughes testified about his prior encounters with law enforcement officials, but failed to mention that he was facing a charge for conspiracy to steal an automobile in juvenile court. This charge stemmed from the events of July 22. Harrington contends his due process rights were violated, but is unclear as to the precise nature of this claim. He does not argue his trial counsel was ineffective for failing to elicit this information; instead, he seems to argue 1) the prosecutor did not reveal this information to his trial counsel, and/or 2) the mere failure of the jury to hear this evidence, regardless of its cause, was fundamental error.

We reject Harrington's second contention as lacking any legal basis. With regard to his claim that the prosecution withheld this information from his trial counsel, Harrington relies exclusively upon inferences. Because the trial strategy involved demonstrating Hughes was an accomplice, Harrington's attorney obviously would have wanted to introduce evidence that he had been charged with a crime stemming from the events of July 22. The failure to introduce this evidence could have been caused only by the attorney's failure to have this information.[4]

These inferences fall well short of demonstrating the prosecution withheld evidence of Hughes' juvenile charges. In the course of state post-conviction hearings, the Iowa state courts found Hughes truthfully answered the questions he was asked; *Harrington v. State*, No. 88–1216, slip op. at 5 (Iowa Ct.App. Jan. 25, 1990); at trial, Hughes was asked whether he was facing murder charges, but was not asked whether he faced conspiracy charges relating to the planned auto theft. These findings of fact are granted a presumption of correctness. 28 U.S.C. § 2254(d) (1988). Further-

---

**3.** This portion of the Court's discussion involved the defendant's rights under the compulsory process clause of the Sixth Amendment. *Id.*, 458 U.S. at 867, 102 S.Ct. at 3446. However, the Court went on to hold that the analysis would be same under the due process clause, *id.* at 872,

102 S.Ct. at 3449, which is where Harrington bases his argument.

**4.** Unfortunately, Harrington's trial counsel died prior to the commencement of post-conviction proceedings; consequently, direct evidence on this point is unavoidably lacking.

more, the district court found that the prosecutor's office maintained an "open file" policy, and that Hughes' pending juvenile charge was thus available to Harrington's counsel. *Harrington v. Nix*, No. 4–91–CV–80046, slip op. at 5 (S.D.Iowa Nov. 25, 1991). Finally, there is a plausible explanation for Harrington's attorney's knowing failure to present this evidence to the jury. The charges were filed solely because Hughes fled Iowa after testifying at McGhee's trial, and Iowa officials needed a means of securing Hughes' presence at trial. Harrington's trial counsel may have declined to explore the issue because it would demonstrate to the jury that Hughes was trying to avoid testifying against Harrington. We also note that the importance of this evidence to the outcome is doubtful at best. Even if the fact of this charge proved Hughes was Harrington's accomplice, there was still corroboration sufficient to satisfy Iowa's corroboration requirement. *See Harrington*, 284 N.W.2d at 248–49. Hughes' testimony already demonstrated that he had a criminal history and that he was at the scene of the crime; the charge represented little, if any, extra impeachment value.

## III. CONCLUSION

There was sufficient evidence to satisfy the requirements of the United States Constitution. Harrington was not prejudiced by the prosecutor's dealings with his alibi witness, nor was he prejudiced by the jury's failure to learn that Hughes faced charges arising from the events of July 22. In any event, there is no indication the prosecutor concealed this information from Harrington's trial counsel, so there is no prosecutorial misconduct. We affirm the district court's denial of the writ.